UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANGELIA L. SOWELL, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 22-cv-1870 ) ) Judge April M. Perry |
| ILLINOIS DEPARTMENT OF HUMAN SERVICES, | ) ) ) |
| Defendant. | ) ) |

**OPINION AND ORDER**

Plaintiff Angelia L. Sowell ("Plaintiff") brings this employment discrimination case against Defendant State of Illinois Department of Human Services ("IDHS") under Title VII of the Civil Rights Act of 1964 ("Title VII"). Specifically, Plaintiff alleges retaliation (Count I), discrimination based on race (Count II), and discrimination based on sex (Count III). Doc. 1 at ¶¶ 46–51. This opinion resolves a motion for summary judgement filed by IDHS. Doc. 56. For the following reasons, IDHS's motion for summary judgement is granted.

BACKGROUND

The Court draws on the parties' Local Rule 56.1 statements to recount the facts, which are undisputed except when noted. The Court views the facts in the light most favorable to Plaintiff, "giving her the benefit of conflicts in the evidence and reasonable inferences from the evidence, but without vouching for the objective truth of any fact or expressing any opinion on the weight of the evidence." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 924–25 (7th Cir. 2020).

Plaintiff, who is an African American female, was employed at all relevant times by IDHS. Doc. 63 at 10. Plaintiff began working at IDHS in September 2013 and was employed in various roles until her termination on October 17, 2021. *Id.* at 10, 20. Most recently, Plaintiff

worked as an Internal Security Investigator 2 within the Office of Inspector General ("OIG"). *Id.* at 10–11. Responsibilities of this position included gathering facts based on interviews, reporting on those interviews in an objective and truthful manner, and testifying in hearings regarding the evidence gathered. *Id.* at 17. Plaintiff's role as an Investigator 2 was a "position of public trust … [and] her credibility [was] essential to being able to fully conduct her work with reliability." *Id.* at 18.

When Plaintiff started as an investigator, she received initial training from Bureau Chief Lazaro Castillo ("Chief Castillo") and field training from fellow investigator Andrew Kajtsa ("Investigator Kajtsa"). *Id.* at 11. Around August 20, 2019, Plaintiff complained to Chief Castillo about Investigator Kajtsa, and he told her that she could file a report with the IDHS Bureau of Civil Affairs ("BCA"). *Id.* That same day, Chief Castillo sent Plaintiff a link to the BCA complaint form. *Id.* Plaintiff also claims that Bureau Chief Donnie Williams, Inspector General Williams Diggins, and Deputy Inspector General Dan Dyslin encouraged her to file the BCA complaint. *Id.* at 2. On October 16, 2019, Plaintiff filed a BCA discrimination complaint against Investigator Kajtsa. *Id.* at 11–12.

Plaintiff's BCA complaint was investigated by Quatrina Robinson ("Investigator Robinson"), who reported that Plaintiff's allegations against Investigator Kajtsa were founded. *Id.* at 12. In response to this report, OIG began the process of recommending discipline against Investigator Kajtsa. *Id.* However, Investigator Kajtsa challenged the report based on an alleged conflict of interest between Plaintiff and Investigator Robinson. *Id.*

IDHS referred Plaintiff's case against Investigator Kajtsa to the Office of Executive Inspector General for the Agencies of the Illinois Governor ("OEIG"). *Id.* at 13. As an outside

2

agency, the OEIG was tasked with conducting an independent investigation of the OIG findings against Investigator Kajtsa. *Id.*

On March 16, 2021, the OEIG interviewed Plaintiff for six hours over Zoom. *Id.* at 3, 5. The OEIG did not tell Plaintiff in advance what the interview topic would be, only that Plaintiff was a witness in an investigation and was obligated to cooperate. *Id.* at 3.

On July 29, 2021, the OEIG issued its report and recommended that Plaintiff and Investigator Robinson be terminated. *Id.* at 13–14. The report found that Plaintiff and Investigator Robinson had a personal relationship prior to the investigation, and that Plaintiff made the following false statements during her OEIG interview: "(1) [Plaintiff] never talked with Ms. Robinson on the phone outside of work; (2) [Plaintiff] did not inform Ms. Robinson about her issues with Investigator Kajtsa before filing the BCA complaint; and (3) no one assisted [Plaintiff] in completing and filing the BCA complaint form." *Id.* at 14. The OEIG report concluded that Plaintiff and Investigator Robinson had "more than a mere working relationship," "were not truthful in their OEIG interviews," and violated the Illinois Ethics Act. *Id.* at 16–17. The OEIG determined that termination was the "appropriate discipline considering the degree of trust, integrity, and credibility required" of Plaintiff's position. *Id.* at 18. Plaintiff disputes that her statements during her OEIG interview were false and claims that the OEIG findings were unreasonable. *Id*.

As part of the investigation, the OEIG reviewed phone and email records. Specifically, the OEIG subpoenaed Investigator Robinson's personal phone records, and used the phone number Plaintiff had provided in her employment application to search for calls between the two. *Id.* at 14. From August 1, 2019 to October 15, 2019, the records showed approximately 767 text messages and thirty-two calls longer than sixty seconds exchanged between the two phone

numbers. *Id.* at 15. Moreover, on October 15, email records showed that Plaintiff sent a draft of her BCA complaint narrative to Investigator Robinson with the following note: "Hey Q, Read and tell me what you think. It's hard for me to relive this. I know it needs spelling changes but I'm mentally drained." *Id*. at 15; Doc. 56-2 at 547. Between this email and when Plaintiff filed her BCA complaint the next day, there were three text messages and more than two hours of phone calls between the phone numbers OEIG linked to Investigator Robinson and Plaintiff. Doc. 63 at 15. The BCA complaint ultimately submitted by Plaintiff on October 16 was a revised version of the draft narrative previously emailed to Investigator Robinson. *Id*. at 16. Finally, phone records showed that starting four minutes after Plaintiff completed her OEIG interview on March 16, 2021, there was a five-hour call between the phone numbers OEIG linked to Investigator Robinson and Plaintiff. *Id.*

Plaintiff does not dispute the accuracy of these phone and email records. Plaintiff does dispute that the phone number in her employment application is hers and claims that the phone number belongs to Plaintiff's daughter. *Id.* at 22, 14.

On August 23, 2021, IDHS issued a predisciplinary notice to Plaintiff for charges of false statements and intentional omissions during the OEIG investigation. *Id*. at 19. On September 13, Plaintiff submitted a written rebuttal challenging the phone records reviewed by the OEIG but providing no supporting documents to show that the phone number was not Plaintiff's. *Id*. at 19. On October 17, 2021, IDHS terminated Plaintiff. *Id.* at 20. The stated reason for the termination was that Plaintiff made false statements and false omissions during an OEIG investigation. *Id.* Plaintiff disputes that this was the real reason for her termination. *Id.*

As for the complaint against Investigator Kajtsa, after IDHS received the OEIG report, it decided not to reinvestigate Plaintiff's complaint and abandoned the discipline against him. *Id.* at

4

21. The OEIG report did not result in any finding against Investigator Kajtsa, stating that Plaintiff's "believability has been undermined by the false statements she made during the OEIG's investigation, and the collusive nature of her interactions with Ms. Robinson during the DHS and OEIG investigations." *Id*.

## LEGAL STANDARD

Summary judgment is proper when the movant shows that there is no genuine dispute of material fact such that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Skiba v. Ill. Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmovant then must come forward with specific facts showing there is a genuine issue for trial. *See LaRiviere v. Bd. of Trs.*, 926 F.3d 356, 359 (7th Cir. 2019). That is, to avoid summary judgment, the nonmovant must show more than metaphysical doubt as to the material facts. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). While the court must construe the facts in the light most favorable to the nonmovant and draw all reasonable inferences in her favor, this obligation does not extend to drawing inferences that are supported by only speculation or conjecture. *See Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013).

## ANALYSIS

Plaintiff's complaint alleges retaliation for having opposed discrimination, retaliation for having participated in an internal investigation of discrimination, retaliation for having participated in filing a charge of discrimination with the EEOC, discrimination of the basis of

5

race, and discrimination on the basis of sex. Doc. 1 at ¶ 1. IDHS counters that Plaintiff was discharged for the legitimate and non-discriminatory reason that Plaintiff made false statements and intentional omissions during the investigation conducted by the OEIG. The material issue at summary judgement therefore is whether Plaintiff's termination was based upon the OEIG finding and recommendation.

## I. Compliance with Local Rule 56.1

The Court first addresses Local Rule 56.1, which bears on the Court's analysis of whether there is a genuine dispute of material fact between the parties. As is required by Local Rule 56.1, the parties filed statements of material facts along with their summary judgment briefs. Docs. 56-2, 63, 67. Local Rule 56.1's purpose is "to aid the district court, which does not have the advantage of the parties' familiarity with the record and often cannot afford to spend the time combing the record to locate the relevant information in determining whether a trial is necessary." *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011) (internal quotation omitted). Under Local Rule 56.1, the movant must supply the Court with "a statement of material facts" in the form of numbered paragraphs asserting what it considers to be undisputed facts. L.R. 56.1(a); Fed. R. Civ. P. 56(c)(1). Each asserted fact "must be supported by citation to the specific evidentiary material, including the specific page number, that supports it," and may be disregarded if presented without supporting citation. L.R. 56.1(d)(2). When the opposing party disputes any asserted fact, they "must cite specific evidentiary material that controverts the fact and must concisely explain how the cited material controverts the asserted fact." L.R. 56.1(e)(3). "Asserted facts may be deemed admitted if not controverted with specific citations to evidentiary material." *Id.* Once statements are submitted and responded to, the district court may limit its analysis of the facts on summary judgment "to evidence that is properly identified and supported

in the parties' statements." *Bordelon v. Chicago Sch. Reform Bd. of Trs.*, 233 F.3d 524, 529 (7th Cir. 2000). "When a responding party's statement fails to dispute the facts set forth in the moving party's statement in the manner dictated by the rule, those facts are deemed admitted for purposes of the motion." *Curtis v. Costco Wholesale Corp.*, 807 F.3d 215, 218 (7th Cir. 2015). The district court has discretion to expect strict compliance with Rule 56.1. *See Ammons v. Aramark Unif. Servs., Inc.*, 368 F.3d 809, 817 (7th Cir. 2004); *Stevo v. Frasor*, 662 F.3d 880, 886–87 (7th Cir. 2011) ("Because of the high volume of summary judgment motions and the benefits of clear presentation of relevant evidence and law, we have repeatedly held that district judges are entitled to insist on strict compliance with local rules designed to promote the clarity of summary judgment filings.").

The Court finds Plaintiff's compliance with Rule 56.1 to be lacking. Key to Plaintiff's ability to survive summary judgment is a dispute as to whether IDHS terminated Plaintiff because of discrimination or retaliation, or because of the OEIG report findings. However, when responding to IDHS's proposed material fact that "Plaintiff was discharged based on the finding of the OEIG that she made false statements and false omissions during an OEIG investigation," Plaintiff disagreed and cited all forty paragraphs of her Local Rule 56.1(b)(3) statement. Doc. 63 at 20. The Court notes that the record in this case is vast with approximately 1,500 pages of exhibits in total. This court "need not scour the record to make the case of a party who does nothing." *Herman v. City of Chicago*, 870 F.2d 400, 404 (7th Cir. 1989). Plaintiff's "mere disagreement with the movant's asserted facts is inadequate if made without reference to specific supporting material." *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). The Court in its discretion does not go so far as to deem admitted all of IDHS's facts to which Plaintiff responded in this blanket fashion, but does believe that Plaintiff's inability to identify specific admissible

7

evidence contradicting IDHS's key facts calls into serious question the existence of a genuine dispute of material fact. This lack of evidence supporting Plaintiff's arguments is discussed in greater detail below.

## II. Title VII Claims

Title VII makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(1). Title VII also prohibits employers from retaliating against an employee because she "has opposed any practice made an unlawful employment practice," or because she has "made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a). Plaintiff has brought claims of both discrimination and retaliation. Consistent with *Ortiz v. Werner Enterprises, Inc.*, this Court will evaluate all of the evidence in its totality when determining whether Plaintiff can support a finding of intentional discrimination. 834 F.3d 760, 765 (7th Cir. 2016) ("Evidence must be considered as a whole, rather than asking whether any particular piece of evidence proves the case by itself—or whether just the 'direct' evidence does so, or the 'indirect' evidence. Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'").[1]

### A. Retaliation Claim

---

[1] Plaintiff has stated that she does not want the evidence analyzed under the *McDonnell Douglas* framework, Doc. 64 at 7, and the Seventh Circuit has made clear that this is "not the only way to assess circumstantial evidence of discrimination." *David v. Bd. Of Trustees of Community College District No. 508*, 846 F.3d 216, 224 (7th Cir. 2017).

The Court begins with the retaliation claim. "To survive summary judgment on a Title VII retaliation claim, a plaintiff must produce evidence from which a reasonable juror could find that: (1) she engaged in a statutorily protected activity; (2) she suffered an adverse employment action; and (3) there is a causal link between the two." *Alley v. Penguin Random House*, 62 F.4th 358, 361 (7th Cir. 2023). The parties do not dispute that Plaintiff engaged in a statutorily protected activity when she filed an employee discrimination complaint on October 16, 2019. It is also not disputed that Plaintiff suffered a materially adverse action when she was terminated on October 17, 2021. The focus of disagreement at summary judgment is whether a trier of fact could find that there was a "causal connection" between Plaintiff's complaint and her termination.

Title VII retaliation claims require evidence of "but-for" causation. *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013). The key question is whether "the record contain[s] sufficient evidence to permit a reasonable fact finder to conclude that retaliatory motive caused the discharge." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 959 (7th Cir. 2021) (citing *Ortiz*, 834 F.3d at 765). Relevant evidence may include "suspicious timing, ambiguous statements of animus, evidence other employees were treated differently, or evidence the employer's proffered reason for the adverse action was pretextual." *Rozumalski v. W.F. Baird & Assocs., Ltd.*, 937 F.3d 919, 924 (7th Cir. 2019).

Here, there is no evidence of suspicious timing. Plaintiff's complaint was filed two years before her termination, and Plaintiff does not point to anything in that time period that would indicate that IDHS was treating her differently because of the complaint. To the contrary, Plaintiff's performance review after the complaint was satisfactory. Doc. 63 at 12. Nor is there evidence of any statements of animus against Plaintiff. Rather, it is undisputed that apart from

9

her termination, Plaintiff never experienced any instances of discrimination or retaliation by IDHS. Doc. 56-2 at 28. Moreover, Plaintiff does not submit evidence that any other employee in a similar position to Plaintiff was treated differently.[2] Plaintiff supports her retaliation claim only with an argument that IDHS's reliance on the OEIG investigation and recommendation was pretextual.[3]

"When evaluating a plaintiff's evidence of pretext, it is not the court's concern that an employer may be wrong about its employee's performance, or be too hard on its employee. Rather, the only question is whether the employer's proffered reason was ... a lie." *Adebiyi v. S. Suburban Coll.*, 98 F.4th 886, 893 (7th Cir. 2024). "To meet this burden at summary judgment, a plaintiff must identify such weaknesses, implausibilities, inconsistencies, or contradictions in the employer's asserted reasons that a reasonable person could find it unworthy of credence." *Id.*

Plaintiff has not identified any evidence in the record to cast doubt on IDHS's assertion that it relied on the OEIG's findings and recommendations as the basis for Plaintiff's termination.[4] Plaintiff acknowledges that lying during an OEIG investigation is a violation of the

---

[2] To the extent Plaintiff argues that Investigator Kajtsa was a similarly situated employee who was treated differently, the Court does not find this to be an appropriate comparison. Plaintiff was found to have lied during an OEIG investigation, and OEIG recommended that she be terminated. Investigator Kajtsa was alleged to have been involved in discrimination, and the OEIG made no disciplinary findings or recommendations against him. Given the different types of misconduct alleged and different findings and recommendations, they are not similarly situated. *See Reives v. Illinois State Police*, 29 F.4th 887, 892 (7th Cir. 2022) ("In cases … where the plaintiff alleges the employer disciplined him more harshly than his comparator, the most relevant similarities are those between the employees' alleged misconduct, performance standards, and disciplining supervisor. In deciding whether two employees have engaged in similar misconduct, the critical question is whether they have engaged in conduct of comparable seriousness.").

[3] At various points in her briefing, Plaintiff appears to argue that the OEIG itself was retaliating against her. *See, e.g.*, Doc. 64 at 4 ("When defendant reviewed the OEIG report, it did nothing to make sure that that report was not retaliation against Ms. Sowell.") *Id*. at 11 (referencing the "conclusion OEIG wanted to reach"). There is no evidence in the record to support any reasonable inference that a third-party government agency which exists for the purpose of investigating complaints involving other agencies would retaliate against Plaintiff for filing a complaint about another agency.

[4] As already discussed, Plaintiff's Local Rule 56.1(b)(2) response in paragraph 37 does not cite any specific evidentiary material to dispute IDHS's non-retaliatory explanation for firing her. Doc. 63 at 20.

Case: 1:22-cv-01870 Document #: 75 Filed: 03/26/25 Page 11 of 13 PageID #:1789

Illinois Ethics Act, the Illinois Code of Personal Conduct, and several IDHS internal policies. Doc. 63 at 20. Plaintiff also acknowledges that her credibility was an essential part of her role as an Investigator for IDHS. Thus, the Court finds that there is no dispute that lying to the OEIG could serve as a legitimate basis for termination.

Plaintiff, of course, claims that she did not lie to the OEIG, and that the OEIG used the wrong phone number when analyzing Investigator Robinson's phone records. Doc. 63 at 14. But even if the OEIG report was incorrect, that does not mean that IDHS's stated reason for terminating Plaintiff was dishonest. *See Stewart v. Henderson*, 207 F.3d 374, 378 (7th Cir. 2000) ("The focus of a pretext inquiry is whether the employer's stated reason was honest, not whether it was accurate, wise, or well-considered."). It is not as though the OEIG pulled the phone number out of thin air such that IDHS should have inferred that the OEIG conducted a shoddy investigation: Plaintiff acknowledges that the OEIG used the phone number Plaintiff provided in her employment application. Plaintiff asserts that the phone number belonged to her daughter. However, Plaintiff did not provide IDHS with any evidence of this at the time of her termination. Moreover, there were in fact many hours of calls between that phone and Investigator Robinson's phone. While the OEIG's conclusion that Plaintiff was using that phone number could theoretically have been wrong, there is no evidence from which a reasonable jury could infer that IDHS was unreasonable to rely on the OEIG's conclusion.

Additionally, two out of three of the OEIG's findings of untruthfulness relied not on phone calls, but on an email. Namely, the OEIG found that Plaintiff made a false statement about not receiving assistance in completing and filing the BCA complaint form and not informing Investigator Robinson about her issues with Investigator Kajtsa before filing the BCA complaint. But Plaintiff has acknowledged sending an email to Investigator Robinson before filing the

11

complaint asking Investigator Robinson to "Read [the draft] and tell me what you think." Doc. 56-2 at 547. Thus, based on the facts admitted by Plaintiff, objective evidence supported the OEIG's findings.

The OEIG is an independent agency separate from IDHS. There has been no evidence submitted that IDHS does not typically, or did not in this case specifically, rely upon the OEIG's findings and recommendations with respect to personnel matters. Given the undisputed evidence in support of Plaintiff's termination being non-pretextual, and the lack of any evidence presented by Plaintiff that would support an inference of pretext, summary judgment is appropriate for the IDHS on the retaliation claim.

### B. Race and Sex Discrimination Claims

For the same reasons as already stated, Plaintiff's discrimination claims also do not survive summary judgment. To succeed on a Title VII discrimination claim the plaintiff must prove three elements: (1) she is a member of a class protected by the statute, (2) she has been subject to an adverse employment action, and (3) her employer took the adverse action on account of her membership in the protected class. *Abrego v. Wilkie*, 907 F.3d 1004, 1012 (7th Cir. 2018). There is no dispute that Plaintiff is a member of a protected class and suffered an adverse employment action when she was fired. The parties disagree whether she was terminated on account of her race or sex.

Title VII discrimination claims "simply require that race be a motivating factor in the IDHS's challenged employment decision." *Lewis v. Indiana Wesleyan Univ.*, 36 F.4th 755, 759 (7th Cir. 2022). The singular question at summary judgment is "whether the plaintiff has introduced evidence that would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the discharge or other adverse

employment action." *Igasaki v. Illinois Dep't of Fin. & Pro. Regul.*, 988 F.3d 948, 957 (7th Cir. 2021). The Seventh Circuit has identified "three broad types of circumstantial evidence that will support an inference of intentional discrimination: ambiguous or suggestive comments or conduct; better treatment of people similarly situated but for the protected characteristic; and dishonest employer justifications for disparate treatment." *Joll v. Valparaiso Cmty. Sch.*, 953 F.3d 923, 929 (7th Cir. 2020).

As was described in more detail above, Plaintiff has not provided any evidence of discriminatory comments or better treatment of similarly situated individuals. As was also discussed above, there is no evidence that IDHS's reliance on the OEIG was dishonest or for discriminatory reasons. Therefore, summary judgment is appropriate as to Plaintiff's discrimination claims.

## CONCLUSION

IDHS's motion for summary judgment is granted in its entirety.

Dated: March 26, 2025

_____
APRIL M. PERRY
United States District Judge